NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**JAMES EDWARD BRITT, II,**

*Plaintiff-Appellant*

**v.**

**UNITED STATES,**

*Defendant-Appellee*

---

2025-1851

---

Appeal from the United States Court of Federal Claims in No. 1:24-cv-01519-RAH, Judge Richard A. Hertling.

-------------------------------------------------

**JAMES EDWARD BRITT, II,**

*Plaintiff-Appellant*

**v.**

**UNITED STATES, FEDERAL DEPOSIT INSURANCE CORPORATION, UNKNOWN AGENTS OF THE FDIC,**

*Defendants-Appellees*

---

2026-1371

---

Appeal from the United States District Court for the District of Columbia in No. 1:22-cv-03488-CKK, Judge Colleen Kollar-Kotelly.

───────────────────

Decided:  January 23, 2026

───────────────────

JAMES EDWARD BRITT, II, Knoxville, TN, pro se.

AUGUSTUS GOLDEN, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant-appellee.  Also represented by ELIZABETH MARIE HOSFORD, PATRICIA M. MCCARTHY, BRETT SHUMATE.

───────────────────

Before MOORE, *Chief Judge*, DYK and TARANTO, *Circuit Judges*.

PER CURIAM.

James Edward Britt II appeals two orders, one from the District Court for the District of Columbia and one from the Court of Federal Claims ("Claims Court"), each dismissing claims related to his former employment at the Federal Deposit Insurance Corporation ("FDIC").  For the claims appealed from the Claims Court, we *affirm*.  Because we lack jurisdiction to consider the claims raised in Mr. Britt's appeal from the district court, we *transfer* the appeal to the Court of Appeals for the District of Columbia Circuit ("D.C. Circuit").

BACKGROUND

Mr. Britt was an employee of the FDIC.  The facts of his employment history at the FDIC are undisputed.  From 2014 to 2018, Mr. Britt worked in a position classified under the FDIC Corporate Grade ("CG") system at CG-12.  On

June 4, 2018, he voluntarily accepted an appointment as a Risk Management or Compliance Examiner (Mid-Career) at a CG-11 level. With the appointment to a lower grade, Mr. Britt signed a document titled "Voluntary Change to Lower Grade Statement." S. App'x 37.[1] In this document, Mr. Britt acknowledged that his acceptance of the CG-11 position would subject him to the FDIC's re-promotion policy. The re-promotion policy in effect at that time limited Mr. Britt to the higher of his then-current base salary or his highest previous salary earned during his FDIC appointment if he were to be promoted again to a CG-12 position within the next 24 months. Mr. Britt alleges that this created a contract—one controlling the government's pay policy as to re-promotions even after 24 months.

After Mr. Britt accepted the CG-11 position, the FDIC increased the duration of the re-promotion policy to 48 months and made the change retroactive. In 2021, after about 38 months of service at the CG-11 level, the FDIC re-promoted Mr. Britt to a CG-12 position. Under the revised 48-month policy, Mr. Britt did not receive a pay increase with the repromotion.

Mr. Britt then filed a complaint at the District Court for the District of Columbia against the United States, the FDIC, and unknown agents of the FDIC. Mr. Britt asserted twenty-five claims, including breach of contract, breach of an implied duty of good faith and fair dealing, breach of fiduciary duty, fraudulent misrepresentation, intentional and negligent infliction of emotional distress, civil conspiracy, violation of constitutional rights, and other various claims. Mr. Britt sought $13,574,336 in

---

[1] Citations to "S. App'x" refer to the Supplemental Appendix filed by the United States in this appeal. Dkt. No. 7.

compensatory damages and double that amount in punitive damages.

On March 18, 2024, the district court issued an opinion dismissing several claims for lack of subject-matter jurisdiction and for failure to state a claim. The district court held that the Federal Employees' Compensation Act ("FECA") was the exclusive remedy for Mr. Britt's work-related injury claims, making inapplicable the Federal Tort Claims Act, which Mr. Britt relied on to bring his tort claims. The court also held that FECA provided an alternative remedial scheme that precluded Mr. Britt's constitutional-tort claim, and that the civil conspiracy claim failed for lack of an underlying tort. The district court concluded that it lacked jurisdiction over the contract claims and transferred those claims to the Claims Court pursuant to 28 U.S.C. § 1631. S. App'x 12–13.

On October 23, 2024, Mr. Britt filed a "transfer complaint" against the United States in the Claims Court, alleging breach of contract and seeking $4,703,103 in damages. The government moved to dismiss. After finding that Mr. Britt's employment with the FDIC was by appointment and concluding that no contract existed between Mr. Britt and the United States, the Claims Court dismissed the breach-of-contract claim for lack of subject-matter jurisdiction.[2]

Mr. Britt now appeals both district court and Claims Court dismissals. With respect to the appeal from the

---

[2] Mr. Britt also alleged a taking without due process, which the Claims Court dismissed for lack of subject-matter jurisdiction. The Claims Court, applying a liberal construction to Mr. Britt's pro se complaint, also considered and rejected relief under the Back Pay Act, 5 U.S.C. § 5596. On appeal, Mr. Britt does not contest these determinations.

Claims Court, we have jurisdiction under 28 U.S.C.
§ 1295(a)(3), and Mr. Britt's appeal is timely. With respect
to the appeal from the district court, we conclude that
transfer of the appeal to the D.C. Circuit is appropriate.

## DISCUSSION

## I

We first consider Mr. Britt's appeal relating to the
breach-of-contract claims in the Claims Court. Where no
contract exists with the government, the Claims Court
should dismiss a contractual claim for lack of subject mat-
ter jurisdiction. *See Collier v. United States*, 379 F.3d
1330, 1331–32 (Fed. Cir. 2004). We review de novo the
Claims Court's dismissal for lack of subject matter jurisdic-
tion. *Biltmore Forest Broadcasting FM, Inc. v. United
States*, 555 F.3d 1375, 1380 (Fed. Cir. 2009). The existence
of a contract is a mixed question of law and fact. *Cal. Fed.
Bank v. United States*, 245 F.3d 1342, 1346 (Fed. Cir.
2001).

Employees appointed to positions in the federal govern-
ment do not generally have enforceable contract rights. *See
Army & Air Force Exch. Serv. v. Sheehan*, 456 U.S. 728,
738–41 (1982) (finding no contractual rights created by ci-
vilian employment in the military); *Chu v. United States*,
773 F.2d 1226, 1229 (Fed. Cir. 1985) (noting the "well-es-
tablished principle that, absent specific legislation, federal
employees derive the benefits and emoluments of their po-
sitions from appointment rather than from any contractual
or quasi-contractual relationship with the government");
*Kania v. United States*, 650 F.2d 264, 268 (Ct. Cl. 1981)
(noting that a "contract between government and one of its
employees is possible, but it must be specifically spelled out
as a contract").

Mr. Britt attempts to distinguish his case because he
claims the FDIC placed him in a "one of a kind" situation,
as the documents from which the district court determined

he did not have a contract with the government are not used "routinely among substantially all federal employees." Appellant's Informal Opening Br. at 7. Mr. Britt also argues that, unlike other agencies, the FDIC is statutorily authorized to set compensation and thus to create employment contracts. He urges that the FDIC demonstrated an intent to be bound when it presented him with an agreement that would become a permanent part of his personnel file.

These circumstances do not support the conclusion that a contract exists. The FDIC's statutory powers are not relevant to the question whether the relationship between the FDIC and Mr. Britt was specifically spelled out as a contract. *See Kania*, 650 F.2d at 268. Mr. Britt relies on two documents he signed at the time of his acceptance of the CG-11 position as evidence of a contract. One document is an "agreement" requiring Mr. Britt to agree to obtain a Risk Management or Compliance commission within two years but makes no mention of the re-promotion policy. S. App'x 36. The other document is titled "Voluntary Change to Lower Grade Statement" but reflects only Mr. Britt's acknowledgment that he would be subject to the re-promotion policy, which the document explains had certain effects on payment following a re-promotion during the next 24 months. S. App'x 37. Even if we accept Mr. Britt's contention that these documents were drawn uniquely for him, they do not meet the high standard for establishing a contractual relationship governing the government's conduct as employer. In particular, the Voluntary Change document, in simply explaining the re-promotion policy, cannot reasonably be construed as an employment contract—still less as one imposing on the FDIC an obligation restricting the agency's policy choices regarding re-promotions past the 24-month mark. Notably, Mr. Britt's employment documents confirm that his employment was by appointment. S. App'x 33 ("Appointment Affidavit" signed

by Mr. Britt); S. App'x 36 ("Agreement Relating to the Appointment as an Examiner" signed by Mr. Britt).

The undisputed facts establish that no pertinent contract existed between Mr. Britt and the government, and the Claims Court properly dismissed Mr. Britt's breach-of-contract claim for lack of subject-matter jurisdiction.[3]

## II

We finally consider Mr. Britt's appeal relating to non-contract claims presented to the district court. Mr. Britt argues that, because the district court transferred part of his case to the Claims Court, he could not appeal the district court merits order until the Claims Court entered final judgment for its portion of the case. He further argues that, as an interlocutory order, the district court dismissal merged with the final judgment of the Claims Court and may be appealed to this court.

We read the district court to have transferred only the portion of the case pertaining to contract claims and retained jurisdiction as to the dismissed tort and constitutional tort claims. S. App'x 13 ("[T]he Court shall transfer this case to the Court of Federal Claims *with respect to Plaintiff's contract claims*." (emphasis added)). We have held that 28 U.S.C. § 1631 permits district courts to transfer matters to the Claims Court on a claim-by-claim basis. *United States v. Cnty. of Cook, Ill.*, 170 F.3d 1084, 1089 (Fed. Cir. 1999). The D.C. Circuit has interpreted such

---

[3] In the absence of a contract, Mr. Britt alternatively seeks a declaration "that it was a wrongful act of the Defendants to have represented to him that he was entering into an agreement pertaining to his employment with the Defendant." Appellant's Informal Opening Br. at 3. This was not a claim presented to the Claims Court, and we decline to address it for the first time on appeal. *See Boggs v. West*, 188 F.3d 1335, 1337–38 (Fed. Cir. 1999).

partial transfers to bifurcate the transferred claims from the retained claims. *Murthy v. Vilsack*, 609 F.3d 460, 464 (D.C. Cir. 2010). Mr. Britt's tort and constitutional tort claims thus remained with the district court.

We have jurisdiction over appeals from district courts only in actions involving specific subject matter. *See* 28 U.S.C. § 1295(a)(1)–(2). The untransferred claims dismissed by the district court here do not fall within our jurisdiction. We therefore lack jurisdiction to hear this direct appeal from the district court.

The government moves to "transfer Mr. Britt's appeal as it pertains to the decisions of the [district court] to the D.C. Circuit." Response Br. at 9. Mr. Britt also consents to such transfer if we conclude, as we have, that we lack jurisdiction. Where we lack jurisdiction over an appeal, we have authority under 28 U.S.C. § 1631 to "transfer such action or appeal to any other such court . . . in which the action or appeal could have been brought at the time it was filed or noticed." We *transfer* to the D.C. Circuit Mr. Britt's appeal from the district court.

## AFFIRMED-IN-PART AND TRANSFERRED-IN-PART

COSTS

No costs.